IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

VICTOR CALDERON,

    Plaintiff,

v.                           CIVIL ACTION NO. 5:04-1116

MARTY ANDERSON, Warden,
FCI Beckley, et al.,

    Defendants.

<u>MEMORANDUM OPINION</u>

Pursuant to the court's order of September 19, 2005, in which the court overruled both petitioner's objections to Magistrate Judge R. Clarke VanDervort's Proposed Findings and Recommendation [hereinafter "Findings and Recommendation" or "F & R"], confirmed and accepted the F & R, and indicated that an explanatory memorandum opinion would follow forthwith, the court now issues its memorandum opinion.

On October 18, 2004, plaintiff filed a complaint alleging that various persons associated with FCI Beckley acted with deliberate indifference to his serious medical needs in violation of his rights under the Eighth Amendment of the United States Constitution.  By Standing Order filed on October 18, 2004, this case was referred to United States Magistrate Judge R. Clarke VanDervort for proposed finding and recommendation as to disposition.

On August 25, 2005, the Magistrate Judge entered his Proposed Findings and Recommendations as to defendants' motion to dismiss, or, in the alternative, motion for summary judgment (Docket No. 38).   In the F & R, the Magistrate Judge proposed that the district court grant defendants' motion to dismiss, or in the alternative, motion for summary judgment with prejudice and remove this matter from the court's docket.

In his complaint, plaintiff alleges that: (1) on one occasion, defendant Blankenship refused to cut his ingrown toenail (Compl. ¶ 3); (2) that defendants Koby and Blankenship refused to prescribe plaintiff pain medication for his back condition and instead instructed plaintiff to purchase over-the-counter medication from the prison commissary (Id. ¶¶ 1-2, 4); that defendants refused to provide him a heart catheterization procedure (Id. ¶ 10); and that defendants also searched his cell and confiscated his heart medication (Id. ¶ 10).   Additionally, plaintiff alleged that defendants Ormond and Kirkland refused to accept, process, or respond to his administrative remedies; that defendants transported him to a local hospital "chained from head to toe with a black box, which aggravated [his] medical condition; that defendants racially discriminated against him; that defendants verbally abused and harassed him; that defendant Sue Engels refused to follow through with her agreement to transfer plaintiff to a less-secure facility; and that defendants

-2-

justified the retaliatory search of his cell by issuing a
disciplinary report.

In his F & R on defendant's motion to dismiss, the
Magistrate Judge concluded that plaintiff had failed to exhaust
his administrative remedies regarding a number of his claims and
that plaintiff had presented no compelling reason why the court
should excuse his failure to exhaust. (<u>Id.</u> at 15.) Specifically,
the Magistrate Judge discounted plaintiff's argument that the
exhaustion requirements should be waived because they are not
produced in Spanish, plaintiff's native language. (<u>Id.</u>) He also
concluded that the court lacks personal jurisdiction over
defendants Kim White and Harrell Watts; that plaintiff's claims
against defendants in their official capacities are barred by the
doctrine of sovereign immunity; that plaintiff's claims against
defendants Anderson, White, Engles, Ormond, and Canterberry
should be dismissed because they are premised on a theory of
respondeat superior; and plaintiff's allegations are not of a
constitutional magnitude. (<u>Id.</u> at 15-28.) Finally, the
Magistrate Judge found that defendants were entitled to qualified
immunity. (<u>Id.</u> at 40.)

## A.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that

> [t]he judgment sought shall be rendered
> forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on
> file, together with the affidavits, if any,
> show that there is no genuine issue as to any
> material fact and that the moving party is
> entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56.  The moving party has the burden of establishing that there is no genuine issue as to any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the burden then shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence
> in support of the plaintiff's position will
> be insufficient; there must be evidence on
> which the jury could reasonably find for the
> plaintiff.  The judge's inquiry, therefore,
> unavoidably asks whether reasonable jurors
> could find, by a preponderance of the
> evidence, that the plaintiff is entitled to a
> verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 250-51. Significantly, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that

there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Finally, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc.,   369 U.S. 654, 655 (1962).

Ordinarily, a prisoner proceeding pro se may rely on the detailed allegations in his verified pleadings in order to withstand a motion for summary judgment that is supported by affidavits containing a conflicting version of the facts.  Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979).  Thus, a pro se plaintiff's failure to file an opposing affidavit is not always necessary to withstand summary judgment.  Id.

While the court must construe factual allegations in the non-moving party's favor and treat them as true, the court need not treat the complaint's legal conclusions as true.  See, e.g., Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994); Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (providing that a court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted).  "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing

-5-

sufficient to establish the existence of an essential element of
that party's case, and on which that party will bear the burden
of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 217, 322
(1986).

### B.  Analysis

Plaintiff's first objection is that defendant's McLain and
Anderson were not entitled to summary judgment under Rule 56 of
the Federal Rules of Civil Procedure.  (Obj. at 1-2.)
Specifically, plaintiff contends that because he claims he did
not refuse treatment, and defendant McLain claims he did, the
magistrate judge's recommendation of summary judgment is
improper.

Having reviewed the record, the court overrules plaintiff's
objections.  Even reading the facts in the light most favorable
to plaintiff, the record establishes that plaintiff's claims are
not of constitutional magnitude.  Defendants' affidavits, when
combined with plaintiff's medical records and admissions, show
that this dispute centers around, at first, plaintiff's refusal
to have a medical procedure without discussing it with his wife,
and later, his refusal to have the procedure done at facilities
near Beckley.  In Bowring v.  Godwin, 551 F.2d 44, 48 (4th Cir.
1977), the Fourth Circuit held that disagreements between
prisoners and their doctors as to the course of treatment were
not of constitutional significance.  Because the record

establishes that such a disagreement is at the root of plaintiff's claim, the magistrate judge's recommendation that it be dismissed was proper.

To prove a constitutionally significant deprivation of medical care, the inmate must first show that, "objectively assessed," he had a "sufficiently serious" need which required medical treatment.  Brice v. Virginia Beach Corr. Ctr., 58 F.3d 101, 104 (4th Cir. 1995).  A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at substantial risk of serious harm, usually loss of life or permanent disability; a condition for which lack of treatment perpetuates severe pain also presents a serious medical need.  See generally Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978).

Second, the inmate must demonstrate that each defendant was subjectively aware of plaintiff's need and its seriousness.  See Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (holding that because evidence did not show that doctors knew that an inmate had a pituitary gland tumor, failure to diagnose and treat the tumor did not state a claim under the Eighth Amendment even though the inmate ultimately went blind).  The inmate must show that the official was aware of objective evidence from which he could draw an inference that a substantial

-7-

risk of harm existed, that he drew the inference, and that he failed to respond reasonably to the risk.  Farmer, 511 U.S. at 844.

Thus, officials show deliberate indifference to a known, serious medical need by completely failing to consider an inmate's complaints or by acting intentionally and unreasonably to deny the prisoner access to adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 104 (1976); cf. Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir. 1990) (holding that the officials are not constitutionally required to screen pretrial detainees for suicidal tendencies without objective evidence of a serious psychiatric need).  Inadvertent failure to provide treatment, negligent diagnosis, and medical malpractice do not present constitutional deprivations.  Estelle, 429 U.S. at 105-06.  The Fourth Circuit has expressed great reluctance to focus judicial scrutiny on medical judgments about the appropriateness of a specific course of medical treatment provided to an inmate:

> We disavow any attempt to second-guess the
> propriety or adequacy of a particular course
> of treatment.  Along with all other aspects
> of health care, this remains a question of
> sound professional judgment.  The courts will
> not intervene upon allegations of mere
> negligence, mistake, or difference of
> opinion.

See Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318, 318 (4th Cir. 1975).

-8-

Here, according to affidavit testimony of Dr. McLain, plaintiff refused a cardiac catheterization on April 28, 2004, in order to communicate with his wife about the appropriate course of treatment.  (McLain Aff. ¶¶ SS-UU.)  McLain claims that plaintiff was presented a refusal of treatment form to sign regarding his refusal to be treated.  (Id. ¶ UU.)  Following this refusal, medical testimony indicates that plaintiff did not seek treatment again until June 7, 2004, when he again visited the Health Services Department for treatment of a number of chronic medical conditions he suffered from.  (Id. ¶ VV.)

In his objection, plaintiff states that he was prepared to have heart surgery on April 28, 2004, but that when he asked that his wife be notified of the surgery, defendant McLain ordered that he be transferred back to the prison before the surgery could be performed.  (Obj. at 2.)

Although plaintiff states that defendants refused him a necessary heart catheterization, the sum total of defendants' affidavits, plaintiff's medical records, and plaintiff's requests to be transferred to a different hospital refutes his allegations.  In this, the court agrees with the recommendation of the magistrate judge.  (See Docket No. 39 at 33.)  Taking all the evidence in the light most favorable to him, plaintiff first refused the procedure because, for whatever reason, he was not permitted to notify his wife of the procedure.  He later refused

-9-

the procedure because he wanted it to be performed at a facility other than FCI Beckley or a hospital in the Beckley area. Plaintiff's medical records show that he visited the doctor more than fifty times in a seventeen-month period.  From this, it appears that the medical officials at FCI Beckley were doing an admirable job overseeing his welfare.  Plaintiff's medical records indicate that plaintiff could have returned to have a heart catheterization whenever he wanted.  (See Docket No. 36 at 4.)  In Bowring, the Fourth Circuit clearly held that this was the sort of circumstance in which the courts should be loathe to intervene.  See 551 F.2d at 48.  Because the record establishes that plaintiff necessarily fails on the second prong of the Supreme Court's holding in Estelle v. Gamble, 429 U.S. at 105, plaintiff's first objection is DISMISSED.

Further, plaintiff's assertions that defendant Anderson denied him access to necessary surgery out of an unwillingness to pay for it are belied by his own medical records.  As discussed above, plaintiff's medical records show a six-week gap following the day he was allegedly "refused" surgery in his treatment. When plaintiff saw medical staff in July 2004, he reported that he had been feeling well.  (See McLain Aff. ¶ VV.)  Plaintiff's fifty visits to medical officials over the course of a seventeen-month period also provides evidence that this allegation is unsupported.

The Fourth Circuit has made clear that in a <u>Bivens</u> suit, there is no respondeat superior liability.  <u>See</u> <u>Trulock v. Freeh</u>, 275 F.3d 391, 402 (4th Cir. 2001) (citing <u>Estate of Rosenberg v. Crandell</u>, 56 F.3d 35, 37 (8th Cir. 1995)).  Instead, "liability is personal, based on each defendant's own constitutional violations."  <u>Id.</u>  Because outside of plaintiff's unsworn allegation there is no indication in the medical record that plaintiff was refused necessary medical treatment for reason of cost, his only theory of liability against defendant Anderson is respondeat superior.  That theory is unavailable in a <u>Bivens</u> action.  As such, plaintiff's second objection is DISMISSED.

Plaintiff's third objection is that he did not need to exhaust his administrative remedies because he was involved in a life-or-death situation.  The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) requires inmates to exhaust all available administrative remedies prior to filing civil actions alleging violations of their constitutional rights.  <u>See</u> <u>Booth v. Churner</u>, 532 U.S. 731, 740 (2001).  There is no exception included in the exhaustion requirement for medical needs such as plaintiffs.  As such, plaintiff's third objection is DISMISSED.

## C.  Conclusion

For the reasons discussed above, the magistrate judge's decision was well-reasoned and supported by case law. Plaintiff's objections are accordingly OVERRULED.

The Clerk is directed to forward a copy of this Memorandum Opinion to the plaintiff, pro se, and to all counsel of record.

IT IS SO ORDERED this 19th day of September, 2005.

ENTER:

David A. Faber
Chief Judge

-12-